## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 24 2020, 10:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Flora
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of S.B. (Minor Child);

T.B. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

January 24, 2020

Court of Appeals Case No.
19A-JT-1465

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

Trial Court Cause No.
02D08-1809-JT-336

**Najam, Judge.**

# Statement of the Case

T.B. ("Father") appeals the trial court's termination of his parental rights over his minor child, S.B. ("the Child").[1] Father raises a single issue for our review, which we restate as the following two issues:

1. Whether the trial court's finding that Father was not benefitting from services is supported by the record.

2. Whether the trial court clearly erred when it concluded that the conditions that resulted in the Child's removal from Father's care will not be remedied.

We affirm.

# Facts and Procedural History

On September 27, 2018, the Indiana Department of Child Services ("DCS") filed a petition to terminate Father's parental rights over the Child. The trial court held a fact-finding hearing on DCS's petition, after which it entered the following undisputed facts with respect to Father's relationship with the Child:

> 5. . . . [T]here was a physical altercation between the Mother and a man on or about July 12, 2016. The incident of domestic violence occurred in the presence of the [Child and his sibling] and the [C]hild's sibling was struck. On or about August 16, 2016, another incident of domestic violence took place in the

---

[1] The Child's mother has separately appealed the termination of her parental rights. Although our motions panel denied a request to consolidate the appeals, the appeals were assigned to the same writing panel, and we have decided each appeal on the same date.

presence of the [C]hild's sibling. The Court found that Father did not take any steps to protect the safety and the welfare of the [C]hild. The Mother was arrested for domestic battery. The Mother tested positive for cocaine on or about November 11, 2016. The Father tested positive for cocaine as well. The [C]ourt found that the [F]ather left his [C]hild in the Mother's care with full knowledge [of] the act of domestic violence occurring in the home. In addition[,] the [C]ourt found [that] he had been provide[d] services during the pendency of the case[;] he did not participate in the referred services to address his drug use or for housing assistance.

6. A Dispositional Hearing [in the ensuing child-in-need-of-services ("CHINS") case] was held on September 27, 2017[,] as to [Father] . . . . The [C]hild . . . w[as] placed in licensed foster care. The Dispositional Decree incorporated a Parent Participation Plan that required the Father to[ comply with fifteen different requirements].

*      *      *

8. The . . . Father w[as] granted supervised visitation with the [C]hild.

9. A Review Hearing was held on February 8, 2017. . . . The Father, the Court found, had failed to secure a psychological evaluation or participate in therapy. He also tested positive for illegal substances.

*      *      *

22. From the testimony of [DCS] case manager Joshua Meyer, the Court finds that the Father was referred for a diagnostic

evaluation at Park [C]enter in 2016. A second assessment was recommended.

23. The [DCS] referred the Father to Dr. David Lombard, a forensic psychologist[,] for a psychological assessment. From Dr. Lombard's testimony[,] the [C]ourt finds that the Father completed the evaluation on January 22, 2019. He diagnosed the Father as suffering from Cocaine Use Disorder and Personality Disorder NOS. He also included a rule out diagnosis of Bipolar Disorder, Antisocial Disorder[,] and Borderline Personality Disorder. Dr. Lombard referred the Father for substance abuse treatment and weekly mental health counseling.

24. Dr. Lombard testified that his diagnosis was preliminary owing to concerns with regard to the Father's responses to the testing. He recommended that the Father return to be tested again so that he might answer in a more open and honest manner. The Father has refused to retake the tests.

25. From the testimony of John Martin, a toxicologist with [R]edwood Toxicology, the [C]ourt finds that the Father has tested positive for cocaine or its metabolite as recently as February 27, 2019.

26. From the testimony of . . . Meyer, the [C]ourt finds that multiple service referrals were made for the Father but he has only recently begun home based and addiction services.

27. The Father was referred for individual counseling at C.A.P., Inc. From the testimony of Sheila Miano of that agency[,] he has not enrolled in individual counseling. He has completed a substance abuse assessment and was referred for services.

\* \* \*

29.     On March 25, 2019[,] the Father testified that his participation in group therapy has improved since the date Brad Snider[, a licensed addictions counselor,] testified.

30.     The Father admitted to cocaine use as recently as March 4, 2019.

31.     The Father resides with his parents.  From the testimony of . . . Meyer, the Father's parents have also had issues with regard to child neglect.  The Father was referred for home based services at C.A.P., Inc.  From the testimony of home base case manager[] Pat Geimer, the Court finds that the Father has not yet completed the goals.

32.     The [C]hild has been placed outside the home under a dispositional decree for more than six (6) months.

33.     From the testimony [of] Tracy Kearns, the [C]hild's licensed foster care provider[,] the Court finds that the [C]hild had multiple screaming temper tantrums a day.  She is no longer displaying the extreme behaviors.

34.     Should parental rights be terminated[,] [DCS] has an appropriate plan, that being adoption.  The [C]hild is in a potential pre-adoptive home.

35.     The [C]hild's Guardian ad Litem has concluded that the [C]hild's best interests are served by the termination of parental rights.  In support of his conclusion[,] he testified that the parents have not demonstrated and continuity [sic] of life stability.  He also cited the parents' recent positive drug screens.

Appellant's App. Vol. 2 at 13-17 (citations to the record omitted). The court also found the following fact, which is disputed in this appeal:

> 28. Licensed addictions counselor Brad Snider has had the Father in his group therapy program to address the Father[]'s addictions. The Father has not documented any attendance in any 12-step or similar support group as he is required and is not participating in group sessions in any substantial way. Therapist Snider opined that Father is not benefitting from services. He was placed on a zero tolerance risk assessment/level.

*Id.* at 17.

[4]  In light of its findings, the court concluded as follows:

> By the clear and convincing evidence[,] the [C]ourt determines that there is a reasonable probability that [the] reasons that brought about the [C]hild's placement outside the home will not be remedied. . . . The Father has only recently begun services despite having been referred [f]or services since the onset [of] the underlying CHINS case. At the [f]actfinding [hearing,] the [C]ourt found that the Father was not cooperating with services provided to him through provisional orders of this [C]ourt. At the Review Hearing of February 8, 2017, the Court found that he was not in compliance. Similar findings were entered in the January 17, 2018[,] Review Order and in the Permanency Order of July 10, 2018. His substance abuse addictions therapist has reported that the Father is not benefitting from services. The Father has continued to test positive for cocaine as recently as March 4, 2019. He does not have independent housing for the [C]hild despite being offered assistance since the onset of the underlying CHINS case.

*Id.* at 18. The court further concluded that DCS had a satisfactory plan in place for the care and treatment of the Child and that termination of Father's parental rights was in the Child's best interests. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Father appeals the trial court's termination of his parental rights over the Child. The court's termination order recites findings of fact and conclusions thereon following an evidentiary hearing before the court. As our Supreme Court has explained, in such circumstances

> [w]e affirm a trial court's termination decision unless it is clearly erroneous; a termination decision is clearly erroneous when the court's findings of fact do not support its legal conclusions, or when the legal conclusions do not support the ultimate decision. We do not reweigh the evidence or judge witness credibility, and we consider only the evidence and reasonable inferences that support the court's judgment.

*M.H. v. Ind. Dep't of Child Servs. (In re Ma.H.)*, 134 N.E.3d 41, 45 (Ind. 2019) (citations omitted).

"Parents have a fundamental right to raise their children—but this right is not absolute." *Id.* "When parents are unwilling to meet their parental responsibilities, their parental rights may be terminated." *Id.* at 45-46. To terminate parental rights, Indiana Code Section 31-35-2-4(b)(2) (2019) requires DCS to demonstrate, as relevant here, that "[t]here is a reasonable probability

that the conditions that resulted in the [Child's] removal or the reasons for placement outside the home of the parents will not be remedied."

### Issue One: Whether Finding 28 Is Supported By The Record

[7] Father first challenges the trial court's finding number 28. We will not set aside the trial court's factual findings unless those findings are clearly erroneous. Ind. Trial Rule 52(A). A finding is clearly erroneous "when there is no evidence supporting the finding[] . . . ." *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 622 (Ind. 2019). In our review, "we consider only the evidence and reasonable inferences that support the court's judgment." *In re Ma.H*, 134 N.E.3d at 45.

[8] In its finding number 28, the court found, in relevant part, that "Therapist Snider opined that Father is not benefitting from services." Appellant's App. Vol. 2 at 17. According to Father, the court's statement "is not supported by the record." Appellant's Br. at 13. But Father is incorrect. In his testimony, Snider stated that he "find[s] it hard to say that [Father is] benefitting" from addiction-based services in light of "the fact that [Father is] not even abstinent." Tr. Vol. II at 156. And Father does not dispute that he continued to use illegal substances throughout the proceedings before the trial court. Accordingly, we cannot say that the court's finding that Father was not benefitting from services is clearly erroneous.

### Issue Two:  Whether The Conditions That Resulted
### In Removal Will Not Be Remedied

[9]   We next consider Father's argument that the trial court clearly erred when it concluded that the conditions that resulted in the Child's removal will not be remedied.  In determining whether the conditions that led to a child's placement outside the home will not be remedied, a trial court is required to (1) ascertain what conditions led to the child's removal or placement and retention outside the home; and (2) determine whether there is a reasonable probability that those conditions will not be remedied.  *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1231 (Ind. 2013).  Here, there is no dispute that the Child was removed from the care of her mother due the mother's domestic violence and drug use, and DCS did not then place the Child with Father because of Father's own drug use and unstable housing and because Father had known of the mother's domestic-violence issues yet permitted the Child to be in her home anyway.

[10]   In order to determine whether there is a reasonable probability that the conditions that resulted in removal will not be remedied, the court should assess a parent's "fitness" at the time of the termination hearing, taking into consideration any evidence of changed conditions.  *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014).  The court must weigh any improvements the parent has made since removal against the parent's "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation."  *Id.*  When making such decisions, courts should

consider evidence of a "parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment." *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[11] The court did not clearly err when it concluded that the conditions that resulted in Child's placement away from Father will not be remedied. The evidence demonstrates that Father continued to test positive for illegal substances throughout the proceedings before the trial court. Indeed, Father does not dispute that he tested positive for cocaine on at least two different occasions after DCS had filed its petition for the termination of his parental rights. Father also failed to successfully complete recommended services. He repeatedly failed to comply with services during the underlying CHINS proceedings and had only recently begun participating in services near the time of the fact-finding hearing on the termination petition. Moreover, as Snider testified, Father was not benefitting from services. And while Father asserts on appeal that he has stable housing with his parents, he does not dispute the trial court's finding that "Father's parents have also had issues with regard to child neglect." Appellant's App. Vol. 2 at 17.

[12] The evidence supports the trial court's findings, and the findings support the court's conclusion that the conditions that resulted in the Child's removal will not be remedied. Father's argument on appeal is simply a request for this Court to reweigh the evidence, which we cannot do. The trial court did not clearly err when it concluded that there is a reasonable probability that the conditions that

resulted in the Child's removal or the reasons for placement outside of Father's home will not be remedied, and we affirm the trial court's termination of Father's parental rights over Child.

[13] Affirmed.

Vaidik, J., and Tavitas, J., concur.